# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1572V
UNPUBLISHED

| | |
|---|---|
| LEE MEAGHER,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: February 9, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset;  Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for petitioner.

*Kyle Edward Pozza*, U.S. Department of Justice, Washington, DC, for respondent.

## FINDINGS OF FACT[1]

On October 10, 2018, Lee Meagher filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq*.[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on October 15, 2015. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all SECTION references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that the onset of Petitioner's shoulder pain occurred within 48 hours of the October 15, 2015 flu vaccination, as required by the Table for a SIRVA claim, although other fact issues (plus the age of the case) will require the matter's transfer out of SPU.

## I.      Relevant Procedural History

This case was initiated on October 10, 2018. ECF No. 1. On August 5, 2019, Respondent filed a status report indicating that he was willing to engage in discussions with Petitioner regarding a potential settlement. ECF No. 27. Over the next eleven months, the parties engaged in litigative risk settlement discussions. ECF Nos. 29, 31-32, 36, 38-42. However, the parties confirmed on July 10, 2020 that they had reached an impasse. ECF No. 44.

On September 14, 2020, Respondent filed a Rule 4(c) Report opposing compensation in this case. ECF No. 45. In it, Respondent asserted that Petitioner had not established all of the elements of a SIRVA Table claim. Res. Report at 7-9. Specifically, Respondent contended that Petitioner could not establish that her shoulder pain began within 48 hours of the October 15, 2015 vaccination. *Id.* at 7-8. Respondent further argued that there was evidence indicating Petitioner's symptoms were not limited to the shoulder in which the vaccine was administered. *Id.* at 8.

I held a status conference with the parties on November 23, 2020. ECF No. 46. During the call, I informed the parties that I felt Petitioner could likely overcome the issue raised by Respondent regarding the onset of her alleged SIRVA. However, I stated that the nature and location of Petitioner's symptoms presented a more complicated issue that might require expert input. The parties were directed to resume settlement discussions taking into account my initial feedback, and were further informed that the case would be transferred out of SPU if settlement did not occur shortly. I notified the parties that, if the case were transferred, I would likely make a factual finding that Petitioner's shoulder pain began within 48 hours of the October 15, 2015 vaccination prior to issuing an order to reassign the case.

On January 29, 2021, the parties filed a joint status report confirming that they had (again) reached an impasse in their settlement discussions. ECF No. 50. Accordingly, this case is ripe for a determination regarding the onset of Petitioner's shoulder pain.

### II.   Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

### III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." § 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

A special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Finding of Fact

In making a finding regarding the issue of onset, I have reviewed the entire record, including all medical records, affidavits, and Respondent's Rule 4(c) Report.[3] I have specifically based my finding on the following evidence:

- On October 15, 2015, Petitioner was administered a flu vaccine intramuscularly in her right arm at her workplace. Exs. 1 at 1; 15 at ¶ 2.

- On November 12, 2015, Petitioner presented to her primary care provider with a chief complaint of right ankle pain after twisting her ankle six days

---

[3] A more complete recitation of the facts can be found in the Petition and Respondent's Rule 4(c) Report. Given the issues involved in this ruling, I have limited my discussion to the records most relevant to the onset of Petitioner's SIRVA.

4

earlier. Ex. 3 at 23. The associated record does not reflect a complaint of shoulder pain. *Id.* at 23-24.

- On December 24, 2015 (a little more than two months post-vaccination) Petitioner underwent an annual physical examination with her primary care physician. Ex. 3 at 17-20. Petitioner stated that her right shoulder had been sore "since receiving her flu vaccine in her right arm in October 2015." *Id.* at 17. Petitioner's physician recommended that she undergo physical therapy. *Id.*

- On January 5, 2016, Petitioner presented to BWH Occupational Health Service reporting right shoulder pain. Ex. 12 at 3. Petitioner stated that her symptoms began on October 16, 2015, and had worsened over time. *Id.* Petitioner was assessed as having a right rotator cuff injury. *Id.* at 4.

- On January 28, 2016, Petitioner underwent an initial physical therapy evaluation for treatment of right shoulder pain at Briggs Chiropractic & Physical Therapy Office. Ex. 6 at 3-5. Petitioner reported that she had received a flu vaccination on October 15, 2015, and the following day she experienced pain localized to the site of administration. *Id.* at 3. Petitioner was diagnosed with right rotator cuff tendinitis, and the date of onset was recorded as "10-16-15." *Id.*

- On March 3, 2016, Petitioner returned to BWH Occupational Health Service. Ex. 12 at 6. Petitioner reported that her right shoulder had "never stopped hurting since her flu vaccine" in October 2015. *Id.*

- On March 31, 2016, Petitioner had a follow-up appointment with her primary care physician for treatment of right shoulder pain. Ex. 3 at 13. Petitioner stated that she had experienced right shoulder discomfort "since receiving her flu vaccine at work in October." *Id.*

- On July 25, 2016, Petitioner underwent an initial physical therapy evaluation at Bay State Physical Therapy. Ex. 8 at 1. Petitioner reported increased shoulder pain following a vaccination, and the date of onset was recorded as October 16, 2015. *Id.* at 1-2.

- On January 24, 2017, Petitioner completed a "Health History Form" in connection with her treatment at New England Orthopedic Specialists. Ex.

- 9 at 14. Petitioner indicated that she had experienced right shoulder pain since receiving a flu vaccination on October 15, 2015. *Id.*

- On October 12, 2018, Petitioner filed a supplemental affidavit providing additional information regarding her injury and treatment course. Ex. 15. In it, Petitioner averred that she was administered a flu vaccination on October 15, 2015 and had experienced shoulder soreness later that day. *Id.* at ¶¶ 2-3. Petitioner stated that her symptoms persisted during the subsequent days despite her use of over-the-counter medication, heat, Biofreeze, and self-massage. *Id.* at ¶¶ 4-5. Petitioner averred that she reported her shoulder pain during a November 12, 2015 medical appointment for treatment of a right ankle injury; however, Petitioner stated that her medical provider was focused on her ankle during the appointment and did not appear concerned regarding her shoulder symptoms. *Id.* at ¶ 6.

The above items of evidence collectively establish that Petitioner's shoulder pain most likely began within 48 hours of receiving the October 15, 2015 flu vaccine. Petitioner consistently reported her pain as beginning close-in-time to the vaccination (i.e. within a day), and her first treatment visit with respect to the alleged injury was not egregiously long after receiving the vaccine.

Admittedly, there is evidence of an intervening medical appointment between Petitioner's vaccination and December 24, 2015 – the date on which her records first document a complaint of shoulder pain. Indeed, Petitioner presented to her primary care provider on November 12, 2015, after twisting her right ankle. *See* Res. Report at 8 (citing Ex. 3 at 22-24). Respondent asserts that it "strains credulity that [P]etitioner had shoulder pain within 48 hours of vaccination, which continued for a month, and yet she did not seek treatment for it while simultaneously seeking treatment for a twisted ankle." *Id.*

Although Respondent's point is reasonable, a single intervening medical encounter where only one issue was addressed (and was in fact likely the reason for seeking treatment at that time) is not enough to disprove onset. This is especially so given the many assertions at subsequent medical encounters (described above) regarding the post-vaccination timing of Petitioner's symptoms.[4] Furthermore, the affidavit submitted by Petitioner is consistent with the medical evidence, and I have found no reason not to deem it credible.

---

[4] Additionally, as described above, Petitioner asserts that she did indeed report shoulder pain during the November 12, 2015 medical appointment. Ex. 15 at ¶ 6.

I also do not conclude that Petitioner's just over two-month treatment delay undermines her onset assertions. Petitioner's medical records and affidavits reflect a pattern similar to other SIRVA claims, in which injured parties reasonably delay treatment, often based on the (mistaken) assumption that their pain is likely transitory or insignificant. *See, e.g.*, *Larish v. Sec'y of Health & Human Servs.*, 18-20V, 2019 WL 5266886, at *6-10 (Fed. Cl. Spec. Mstr. Jul. 2, 2019) (finding onset of shoulder pain within 48 hours of vaccination despite a nine-week delay in treatment because petitioner's medical records recorded immediate post-vaccination pain); *Tenneson v. Sec'y of Health & Human Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment), *motion for review denied*, 142 Fed. Cl. 329 (2019); *Williams v. Sec'y of Health & Human Servs.*, 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment because petitioner underestimated the severity of her shoulder injury); *Knauss v. Sec'y of Health & Human Servs.*, 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (noting a three-month delay in seeking treatment).

**Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of the October 15, 2015 vaccination.**

### V.     Reassignment of Case

As previously described, Respondent additionally asserts in his Rule 4(c) Report that Petitioner's symptoms were not limited to the shoulder in which the vaccine was administered, and thus the injury might not meet the Table requirements independent of onset. Res. Report at 8. After review of the records, I conclude that this issue will likely require expert input. Because this case has already been pending for over two years without settlement, I find that the circumstances warrant transfer of the case out of the Special Processing Unit. Accordingly, pursuant to Vaccine Rule 3(d), I will issue a separate order reassigning this case randomly to a Special Master.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
